UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| IBRAHEEM SAMIRAH, | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 20-cv-03076 (APM) |
| DISTRICT SMILES, PLLC, et al., | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

Plaintiff Ibraheem Samirah brings this action against his former employer, District Smiles, PLLC, and related individuals, alleging breach of contract, failure to pay wages, discriminatory pay practices, discriminatory firing on account of race, sex, and religion, and unlawful retaliation. Defendants move to transfer venue to the District of Maryland and for partial dismissal for failure to state a claim.[1] For the reasons that follow, the court grants the transfer, and as a result, leaves a decision on Defendants' motion for partial dismissal to the transferee court.

I.

Plaintiff Ibraheem Samirah, a Virginia resident, was employed as a dentist at Defendant District Smiles, PLLC ("District Smiles"). District Smiles is owned by Defendant Maryam Seifi and has its principal place of business in the District of Columbia. *See* Defs.' Mot. to Dismiss, ECF No. 5 [hereinafter Defs.' Mot.], Defs.' Mem. of Law, ECF No. 5-1 [hereinafter Defs.' Mem.], at 3. Before joining District Smiles, Samirah completed his initial training at Seifi's other business,

---

[1] Although Defendants' motion is styled a "Motion to Dismiss," the court treats it primarily as a motion to transfer, consistent with Defendants' actual arguments under 28 U.S.C. § 1404(a). *See* Defs.' Mot. to Dismiss, ECF No. 5, Defs.' Mem. of Law, ECF No. 5-1, at 1, 5.

StarBrite Dental, located in Maryland. *See* Compl., ECF No. 1 [hereinafter Compl.], ¶¶ 10–12; Defs.' Mem. at 4, 9–10; Pl.'s Opp'n to Defs.' Mot., ECF No. 7 [hereinafter Pl.'s Opp'n], at 8. On October 16, 2018, Samirah signed an employment agreement to transition to District Smiles. *See* Compl. ¶ 72; Defs.' Mem. at 4; Defs.' Mot., Ex. 2, ECF No. 5-2 [hereinafter Defs.' Ex. 2]. The employment agreement contained a forum-selection clause stating that "[a]ny suit involving any dispute or matter arising under the Agreement may only be brought in the United States District Court for the District of Maryland or any Maryland State Court having jurisdiction over the subject matter of the dispute or matter." Defs.' Ex. 2 § 15.13.

Samirah worked at District Smiles from October 2018 to June 2019. Compl. ¶ 72. He alleges that during that time he was not provided with the clinical hours guaranteed in his employment agreement. Compl. ¶¶ 191–209. Samirah also asserts that, as a practicing Muslim who identifies as Palestinian, Arab, and black, he was subjected to bigoted and racist statements made by Seifi and other District Smiles employees. Compl. ¶¶ 3, 74, 82–89, 119–126. He contends that he was eventually fired on account of his race, sex, and religion and in retaliation for complaining about both the discrimination he experienced and his limited clinical hours. Compl. ¶¶ 217–45. Samirah further avers that after his firing Defendants offered his preferred compensation terms to his replacement, a woman who did not identify as black and "is an outwardly non-religious Muslim." Compl. ¶¶ 210–16.

On June 16, 2020, Samirah filed this action in D.C. Superior Court, suing Defendants for breach of contract and violations of the District of Columbia Wage Payment and Collection Law ("DCWPCL"), the District of Columbia Human Rights Act ("DCHRA"), and 42 U.S.C. § 1981. Compl. ¶¶ 191–245. Having removed the case to this court, Defendants now move to transfer the

case to the District of Maryland per the forum-selection clause. Defs.' Mem. at 1. Additionally, they move for partial dismissal for failure to state a claim. *Id.*

II.

Under the federal transfer statute, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). A district court considering a section 1404(a) motion must evaluate various private and public interest factors. *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 62 (2013). Private interest factors include "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses [. . .] and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* at 62 n.6 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)). Public interest factors "may include the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; and the interest in having the trial of a diversity case in a forum that is at home with the law." *Id.* (cleaned up). Ordinarily, "[t]he [c]ourt must also give some weight to the plaintiff['s] choice of forum." *Id.*

When the parties' dispute is governed by a valid forum-selection clause, however, the calculus changes, and the clause is given "controlling weight in all but the most exceptional cases." *Id.* at 60. That is because the "enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system." *Id.* at 63 (cleaned up).

3

The presence of a valid forum-selection clause alters the usual section 1404(a) analysis in two ways. "First, the plaintiff's choice of forum merits no weight." *Id.* "[W]hen a plaintiff agrees by contract to bring suit only in a specified forum . . . the plaintiff has effectively exercised [his choice of forum] before a dispute arises." *Id.* Because "[o]nly that initial choice deserves deference," the plaintiff "must bear the burden of showing why the court should not transfer the case to the forum to which the parties agreed." *Id.* at 63–64.

Second, the court evaluates only the public-interest factors. *Id.* at 64. "When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." *Id.* Thus, a court "must deem the private-interest factors to weigh entirely in favor of the preselected forum." *Id.* To overcome a valid forum-selection clause, the plaintiff "must bear the burden of showing that public-interest factors overwhelmingly disfavor a transfer." *Id.* at 67.

### III.

#### A.

At the outset, the court notes that Samirah does not dispute that his employment agreement contains a mandatory forum-selection clause. *See* Pl.'s Opp'n at 12–13. Nor does he contest its validity. *See id.* at 11–27. Rather, Samirah argues that because four of his six claims fall outside the clause's ambit, and the remaining two claims are "better suited for adjudication in [D.C.]," Defendants' transfer request should be denied. *See* Pl.'s Opp'n at 25. The court disagrees.

"[C]ourts look at the substance of the claims as they relate to the language of the clause to determine whether a claim is covered by a forum selection clause." *Cheney v. IPD Analytics, LLC*, 583 F. Supp. 2d 108, 125 (D.D.C. 2008). Here, the forum-selection clause covers "[a]ny suit involving any dispute or matter arising under [Samirah's employment agreement]." Defs.' Ex. 2

§ 15.13.  The key issue, therefore, is the scope of the term "arising under."  The D.C. Circuit has applied the analogous phrases "arising from" and "arising out of" more narrowly than "in connection with" or "in relation to."  *See North American Butterfly Association v. Wolf*, 977 F.3d 1244, 1260 (D.C. Cir. 2020).  "Because 'arise out of' means 'to originate from a specified source,' the phrase 'arising out of' generally requires 'a causal connection,' not merely a 'logical' one."  *Id.* (cleaned up).  In the court's view, the phrase "arising under" is no different.

Even so, at the very least, Samirah's breach of contract claim falls within the scope of the forum-selection clause.  After all, the allegedly breached contract—his employment agreement—contains the forum-selection clause.  Compl. ¶¶ 194–97.  So, it is indisputable that the breach claim "arose under" the agreement in a causal sense.  *See Cheney*, 583 F. Supp. 2d at 122 (noting that the claims "ultimately depend[] on the existence of a contractual relationship between the parties" and "resolution of the claims relates to interpretation of the contract").  Samirah does not contend otherwise.  See Pl.'s Opp'n at 25 (conceding that his breach of contract and unpaid wage claims "arise on account of contractual provisions").

But what about Samirah's remaining claims?  Section 1404(a) provides for the transfer of "any civil *action*," not individual claims.  28 U.S.C. § 1404(a) (emphasis added); *see Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1518 (10th Cir. 1991) ("Section 1404(a) only authorizes the transfer of an entire action, not individual claims."); *Bederson v. United States*, 756 F. Supp. 2d 38, 47 (D.D.C. 2010) ("Notably, the plain language of § 1404(a) permits transfer of an entire 'civil action,' and not of discrete claims therein.").  Accordingly, because at least Samirah's breach of contract claim merits transfer per the forum-selection clause, the court must transfer the entire action, including those claims for which the clause might not apply.  *See Edebri v. North Highland Company LLC*, No. 20-cv-00758, 2020 WL 5411303, at *2 (D.D.C. Sept. 9,

2020) (preventing plaintiffs from "elid[ing] forum selection clauses simply by piling on additional claims that are not strictly covered by the clause").

B.

The applicable public-interest factors do not alter the court's conclusion. Samirah asserts that the District of Columbia's local interest in deciding local controversies at home, coupled with this court's familiarity with the governing law in this case and the relative congestion in the District Court for District of Maryland, should trump any application of the forum-selection clause. Pl.'s Opp'n at 17–24. But even if those three considerations collectively favor non-transfer, they do so only mildly, and so Samirah still falls well short of his burden to demonstrate that the public interest factors "*overwhelmingly* disfavor a transfer." *Atl. Marine*, 571 U.S. at 67 (emphasis added).

The local-interest factor merits keeping the case in this court—the parties' dispute is largely centered in the District of Columbia—but neither of the other two factors moves the needle in that direction. There is no good reason to believe that the District Court for the District of Maryland cannot properly apply the DCWPCL and DCHRA to this case. In fact, that court regularly decides cases involving those statutes. *See generally Lerch v. WCS Construction, LLC*, No. TDC-18-4014, 2020 WL 5747186 (D. Md. Sept. 25, 2020) (DCHRA); *Kenion v. Skanska USA Building, Inc.*, No. RDB-18-3344, 2019 WL 4393296 (D. Md. Sept. 13, 2019) (DCHRA); *Alvarez-Soto v. B. Frank Joy, LLC*, 258 F. Supp. 3d 615 (D. Md. 2017) (DCWPCL); *Quiroz v. Wilhelm Commercial Builders, Inc.*, No. WGC-10-2106, 2011 WL 5826677 (D. Md. Nov. 17, 2011) (DCWPCL). "Given the proximity of the two jurisdictions, it is not unreasonable to assume that Maryland courts will be familiar with District of Columbia law and vice versa." *Jimenez v. R&D Masonry, Inc.*, No. 15-1255 (JEB), 2015 WL 7428533, at *4 (D.D.C. Nov. 20, 2015).

As for congestion, Samirah notes that the median time interval from filing to disposition of civil cases is somewhat longer in the District of Maryland. Pl.'s Opp'n at 23 (8.5 months v. 5 months). But courts in this jurisdiction have held that similar differences in intervals "only slightly" influence the public-interest analysis. *See Smith v. Yeager*, 234 F. Supp. 3d 50, 60 (D.D.C. 2017) (8 months v. 5.2 months). More importantly, such statistics provide, "at best, only a rough measure of the relative congestion of the dockets in the two districts. They do not, for example, reflect the differences in the caseloads carried by different individual judges in each district. Any disparities between the lengths of time from filing to trial may also reflect differences other than congestion, such as differences in the types of cases that are likely to be tried in each district and the level of discovery and pre-trial motion practice required in those cases." *United States v. H&R Block, Inc.*, 789 F. Supp. 2d 74, 84–85 (D.D.C. 2011).

Taken together, the public-interest factors do not "overwhelmingly disfavor a transfer" and therefore do not make this one of "the most unusual cases" in which the court should override a valid forum-selection clause. *Atl. Marine*, 571 U.S. at 66, 67.

IV.

For the foregoing reasons, Defendants' motion is granted in part. Specifically, the court grants Defendants' request that this action be transferred to the United States District Court for the District of Maryland. The court does not address the portion of Defendants' motion seeking dismissal of Plaintiff's DCWPCL claims, as that issue is more appropriately resolved by the transferee court. A separate Order accompanies this Memorandum Opinion.

Dated: March 10, 2021

Amit P. Mehta
United States District Court Judge