# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

IBRAHEEM SAMIRAH, DDS,

    Plaintiff/Counterclaim Defendant,

v.

DISTRICT SMILES, PLLC, DR. MARYAM SEIFI, WILLIAM POWELL and NINA KIMMEL,

    Defendants/Counterclaim Plaintiffs.

Civil Action No. TDC-21-0829

## MEMORANDUM OPINION

Plaintiff Dr. Ibraheem Samirah, a dentist formerly employed by Defendant District Smiles, PLLC ("District Smiles"), filed this civil action against Defendants District Smiles, Dr. Maryam Seifi, William Powell, and Nina Kimmel in which he alleges claims of breach of contract, failure to pay wages under District of Columbia law, and discrimination and retaliation under federal and D.C. law. In turn, Defendants have asserted counterclaims for breach of contract and misappropriation of trade secrets. Pending before the Court is Defendants' Partial Motion to Dismiss in which they seek dismissal of Samirah's claim that the filing of the counterclaims constituted unlawful retaliation. Upon review of the pleadings and submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, Defendants' Motion will be DENIED.

## BACKGROUND

The Court summarizes only those facts from the pleadings relevant to the disposition of the pending Motion. Plaintiff Ibraheem Samirah is a practicing dentist who is biracial, identifies as

Black, and is a practicing Muslim. From August 2018 to June 2019, Samirah was employed at dental practices owned by Defendant Maryam Seifi, consisting of Starbrite Dental ("Starbrite") in Maryland and District Smiles in Washington, D.C. Defendant Nina Kimmel is Seifi's daughter and is the Chief Operating Officer and Chief Financial Officer of both of Seifi's practices. Defendant William Powell is Seifi's husband and is the office manager of District Smiles.

Samirah began working as a full-time dentist at Starbrite in August 2018. According to Samirah, while he worked at Starbrite, Defendants repeatedly and intentionally mispronounced Samirah's first name, including calling him "Abraham," even after he corrected them many times. Am. Compl. ¶¶ 19-22, ECF No. 44. Samirah also alleges that personnel at StarBrite repeatedly used racially derogatory slurs. Although Samirah reported these statements to Kimmel, no action was taken. Samirah asserts that later, Powell and a staff member made racially or religiously derogatory statements while Samirah was working at District Smiles.

In October 2018, Samirah was offered and accepted the position of lead dentist at District Smiles. Samirah's employment contract stated that he would receive 30 percent of the revenue from District Smiles, minus a percentage of laboratory fees, and that he was to be offered no less than 48 hours of clinical work each week. Samirah alleges, however, that he was not provided with the clinical hours guaranteed in his employment contract. Samirah raised this issue with Defendants and also complained about the requirement that he remain present in the office while there were no patients. After Defendants rejected Samirah's requests to be paid according to his contract, Samirah proposed that he not work on Tuesdays, Thursday, and Fridays to lessen the amount of time he would need to be in the office unpaid. Kimmel refused to allow any changes and alleged that Samirah was breaching the contract but refused to specify how he was violating its terms. Ultimately, Defendants continued to refuse Samirah's requests and demanded that he either buy the practice or resign.

On June 17, 2019, Samirah was terminated. Samirah contends that he was fired as a result of race, sex, and religious discrimination and in retaliation for his complaints about both the

discrimination he experienced and his limited clinical hours. Samirah asserts that immediately after he was terminated, Defendants offered his preferred compensation terms to his replacement, a woman straight out of dental school who did not appear to be Black or a practicing Muslim.

On June 16, 2020, Samirah filed the original Complaint in this case in the Superior Court of the District of Columbia. The Complaint alleged the following claims in the following numbered counts: (1) breach of contract; (2) failure to pay wages in violation of the D.C. Wage Payment and Collection Law ("DCWPCL"), D.C. Code Ann. § 32-1301 to 32-1302 (West 2013); (3) discriminatory pay practices on account of race, sex, and religion, in violation of the D.C. Human Rights Act ("DCHRA"), D.C. Code Ann. § 2-1401.01 (West 2019), and on account of race, in violation of 42 U.S.C. § 1981; (4) discriminatory termination on account of race, sex, and religion, in violation of the DCHRA, and on account of race in violation of 42 U.S.C. § 1981; (5) unlawful retaliatory termination in violation of the DCHRA and 42 U.S.C. § 1981; and (6) unlawful retaliatory termination in violation of the DCWPCL, D.C. Code Ann. § 32-1311(a)(1).

After the case was removed to federal court and transferred to the United States District Court for the District of Maryland, this Court considered Defendants' first Partial Motion to Dismiss ("the First Motion"), in which Defendants sought dismissal of Counts 2 and 6. On May 31, 2022, after hearing argument from the parties, the Court denied the First Motion. On June 30, 2022, Defendants filed their Answer and Counterclaims in which they asserted the following numbered counterclaims: (1) breach of contract, based on Samirah's alleged violations of an employment contract provision, by engaging in outside professional activities without written notice to District Smiles and by engaging in "unprofessional conduct," including sleeping in and engaging in sexual conduct in the office, talking on the phone during patient visits, and copying patient information from District Smiles's computer system; and (2) misappropriation of trade secrets, in violation of the D.C. Uniform Trade Secrets Act, D.C. Code Ann. §§ 36-401 to 36-410 (West 2014).

3

On August 19, 2022, Samirah filed an Amended Complaint in which he added, in Count 7, a claim of unlawful retaliatory threats and counterclaims in violation of 42 U.S.C. § 1981, the DCHRA, and the DCWPCL based on actions taken after the filing of this case. Specifically, he alleges that shortly after the filing of the original Complaint, Defendants, through counsel, threatened to file a baseless claim of intentional infliction of emotional distress ("IIED") and threatened to release a "potentially embarrassing" video. Am. Compl. ¶¶ 210-216, 220. He further alleges that the filing of the counterclaims also constituted unlawful retaliation because Defendants never alleged such violations until after he filed suit and because those claims are meritless.

## DISCUSSION

The present Motion is the second Motion to Dismiss ("the Second Motion") filed by Defendants in this case. In the Second Motion, Defendants seek dismissal of the recently added Count 7 on the grounds that (1) the newly asserted retaliation claim is improper because they have a right to seek redress in the courts through the filing of counterclaims and because their counterclaims were compulsory and thus could not be deemed retaliatory; and (2) Samirah has not alleged sufficient facts to demonstrate that their counterclaims were without basis in fact or law.

### I.   Legal Standard

To defeat a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005).

## II.  Retaliation

In Count 7, Samirah alleges that Defendants' threats after he filed suit, and the counterclaims for breach of contract and misappropriation of trade secrets, constitute unlawful retaliation under § 1981, the DCHRA, and the DCWPCL. For claims of retaliation under § 1981, and D.C. laws, courts apply the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973) for use in claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a) (2018). *See Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216 (4th Cir. 2016); *Gaujacq v. EDF, Inc.*, 601 F.3d 565, 577 (D.C. Cir. 2010) (stating that the *McDonnell Douglas* framework applies to retaliation claims under the DCHRA); *Bartolo v. Whole Foods Mkt. Grp., Inc.*, 412 F. Supp. 3d 35, 44 (D.D.C. 2019) ("Courts in this District are to apply the McDonnell Douglas burden-shifting framework to statutory retaliation claims arising under District of Columbia law.") (citing cases). At the pleading stage, to establish a *prima facie* case of retaliation, plaintiffs must demonstrate that: (1) they engaged in protected activity; (2) they were subjected to a materially adverse action; and (3) there is a causal link between the protected activity and the adverse action. *Guessous*, 828 F.3d at 217. If the plaintiff makes such a showing, then the burden shifts to the employer to articulate a legitimate, non-retaliatory reason for the adverse action, at which point the burden then shifts back to the plaintiff to show that the defendant's proffered reason is pretextual and that the true reason was retaliatory. *Id.* at 216.

There is no dispute that Samirah's filing of the present lawsuit was a protected activity. In seeking dismissal of Count 7, Defendants argue that Samirah has failed to allege a materially adverse action sufficient to support a claim for retaliation because (1) their counterclaims are legally protected and compulsory; (2) Samirah has failed to allege facts demonstrating that their claims are baseless; and (3) Samirah was no longer an employee at the time of any purported materially adverse action.

5

Defendants also argue that the causation requirement is not met because there is insufficient temporal proximity between Samirah's claim and their counterclaims.

### A.    Materially Adverse Action

Defendants primarily argue that the filing of their counterclaims cannot constitute a materially adverse action under these circumstances. A counterclaim filed by an employer in response to an employee's lawsuit can constitute a materially adverse action for purposes of a retaliation claim if the counterclaim was filed "with a retaliatory motive and without a reasonable basis in fact or law." *Darveau v. Detecon, Inc.*, 515 F.3d 334, 341 (4th Cir. 2008) (citing *Bill Johnson's Rests., Inc. v. N.L.R.B.*, 461 U.S. 731, 749 (1983)) (applying legal principles from Title VII to a retaliation claim under the Fair Labor Standards Act); *Castillo v. Joann Urquhart, M.D., P.C.*, 855 F. App'x 877, 879 (4th Cir. 2021) (finding at the summary judgment stage, that a counterclaim by an employer had a reasonable basis in fact and law); *see also Melendez v. Poy Loung DC Group, LLC*, No. 17-CV-370 (CKK), 2018 WL 4637007, at *12 (D.D.C. Sept. 27, 2018) (stating that a baseless counterclaim could form the basis of a retaliation claim under the DCWPCL). The case law on this point provides no exception for compulsory counterclaims under Federal Rule of Civil Procedure 13(a)(1). *See Darveau*, 515 F.3d at 341; *Melendez*, 2018 WL 4637007, at *12 (considering a DCWPCL retaliation claim based on a compulsory counterclaim).

Here, Samirah has sufficiently alleged in Count 7 that the counterclaims of breach of contract and misappropriation of trade secrets were filed with a retaliatory motive and that they lack a basis in fact or law. Particularly in light of the allegations that Defendants engaged in threats to charge attorney's fees to Samirah and to file an IIED claim, which almost certainly lacked a legal basis under the known facts, and to release an embarrassing video from an incident that had up to that point not led to any sanction or discipline, the allegation of a retaliatory motive is sufficient at the pleading stage. This inference is further supported by the fact that although

6

Samirah was terminated in June 2019, Defendants never specified any alleged breaches of contract or misconduct relating to alleged trade secrets until after he filed suit in June 2020 and Defendants received the original Complaint.

As for whether the counterclaims have a basis in fact, the Court cannot find that they necessarily have such a basis so as to warrant dismissal at the pleading stage. On the breach of contract claim, Defendants allege that Samirah violated the employment contract by running for public office without providing notice to them, failing to arrive on time to see patients, damaging company computers, using company equipment for personal business, sleeping and engaging in sexual conduct on the job, and committing other violations of provisions of the employee handbook. In the Amended Complaint, however, Samirah, denies the allegations in the counterclaim and asserts that he did, in fact, notify Defendants of his intent to run for office. He asserts that during his employment at District Smiles he was never provided with any reports of these alleged misdeeds, was never told which, if any, provisions of his contract he violated, and was even awarded lunch and a gift card for excellent performance. Where there are plainly factual disputes over whether Samirah breached the employment contract, the Court cannot make a determination at this time on whether the breach of contract counterclaim is baseless.

On the misappropriation of trade secrets claim, while Defendants allege that Samirah copied patient information from the District Smiles computer system, he asserts that he obtained such information only for the purpose of informing current patients of his departure before their follow-up appointments. Notably, although Defendants generally allege in their counterclaims that Samirah used this patient information to advance his new dental practice, Samirah asserts in the Amended Complaint that he did not set up any such practice. At this stage, without discovery as to the true facts, the Court cannot conclude that this claim had a factual basis.

Where the facts underlying the counterclaims are in dispute, Defendants allegedly engaged in threats that could be deemed materially adverse actions, and the timing of the allegations is consistent with and arguably probative of a retaliatory motive, the Court will deny the Motion to Dismiss Count 7. *See, e.g., Melendez,* 2018 WL 4637007, at *12 (denying summary judgment on the plaintiff's retaliation claim based on the defendants' filing of counterclaims that allegedly lacked a reasonable basis in fact or law because the issue had not been sufficiently briefed); *Johnson v. Helion Techs.*, No. DKC-18-3276, 2021 WL 3856239, at *21 (D. Md. Aug. 27, 2021) (granting summary judgment to the plaintiff on a retaliation claim based on the filing of a counterclaim after finding, after discovery, that the counterclaim was "totally baseless"). Defendants' reliance on *Gross v. Akin, Gump, Strauss, Hauer & Feld, LLP*, 599 F. Supp. 2d 23, (D.D.C. 2009), does not alter this conclusion. In *Gross*, the court applied a standard different from the presently applicable Fourth Circuit standard and decided on a motion for summary judgment, after discovery, that counterclaims had a basis in fact and thus could not be deemed retaliatory. *Id.* at 33-34. Under the presently applicable standard, and at the pleading stage without the benefit of discovery, the Court cannot make such a determination.

Finally, Defendants' argument that there can be no materially adverse action because Samirah was no longer an employee at the time of the alleged retaliatory activity is unavailing. In the context of Title VII, the United States Supreme Court has held that a former employee may pursue a retaliation claim arising from post-employment actions by the employer based on its interpretation of Title VII as applying to both current and former employees. *Robinson v. Shell Oil Co.*, 519 U.S. 337, 345–46 (1997). The United States Court of Appeals for the Fourth Circuit extended this reasoning to allow a plaintiff to pursue a retaliation claim under the FLSA based on post-employment actions. *Darveau*, 515 F.3d at 341-42 (finding "no significant differences in either the language or intent of [Title VII and FLSA] regarding the type of adverse action their retaliation provisions prohibit" and noting that

8

they have identical general definitions of "employee"). As noted above, Title VII principles generally apply to § 1981 and DCHRA retaliation claims relating to employment, *see Guessous*, 828 F.3 208 at 216–17; *Gaujacq*, 601 F.3d at 577, and the language of those statutes do not specifically limit their protections to current employees. *See* 42 U.S.C. § 1981 ("All persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . and to the full and equal benefit of all laws . . as is enjoyed by white citizens"); D.C. Human Rights Act, D.C. Code Ann. § 2-1402.61 ("It shall be an unlawful discriminatory practice to. . . retaliate against . . . any person . . . on account of having exercised or enjoyed . . . any right granted or protected under this chapter."). Likewise, the plain language of the DCWPCL provides protections to "persons," not just "employees." D.C. Code Ann. § 32-1311(a) ("It shall be unlawful for any employer to discharge, threaten, penalize, or in any other manner discriminate or retaliate against any employee or person[.]"). Accordingly, the Court finds that a retaliation claim under § 1981 and the D.C. laws may be based on materially adverse actions occurring after the termination of employment.

## B. Causation

As for the third prong, Defendants assert that Samirah has not properly alleged causation because the counterclaims were filed in June 2022, two years after the original Complaint was filed and thus outside the 90-day period during which adverse actions are presumptively deemed to be retaliatory under the DCWPCL. That provision states that:

> The employer, or any person acting on behalf of the employer, taking adverse action against an employee within 90 days of an employee or other person's engagement in the activities set forth in subsection (a) . . . shall raise a presumption that such action is retaliation, which may be rebutted by clear and convincing evidence that such action was taken for other permissible reasons.

D.C. Code Ann. § 32-1311(b). This argument fails for two reasons. First, while Samirah has cited this provision, he asserts that Defendants engaged in threats of filing a lawsuit within that 90-day period, including that during that time period, they threatened, through counsel, to file an IIED claim and to

9

release an embarrassing video. At the pleading stage, these allegations are arguably sufficient to support a retaliation claim. Second, even if these threats do not qualify as materially adverse actions, they arguably demonstrate a "pattern of antagonism" that can support a retaliation claim even with some temporal gap between the protected activity and the materially adverse action. *Walker v. England*, 590 F. Supp. 2d 113, 140 (D.D.C. 2008). Moreover, under the circumstances of this case, in which Defendants filed the First Motion to Dismiss and did not file an Answer until after it was resolved, Defendants effectively filed their counterclaims at the first available opportunity. *See Price v. Thompson*, 380 F.3d 209, 213 (4th Cir. 2004) (holding that a reasonable trier of fact could conclude that the selecting official knew of the protected activity where he declined to hire the plaintiff "at the first available opportunity"). Accordingly, Samirah has sufficiently pleaded causation.

## CONCLUSION

For the foregoing reasons, Defendants' Second Motion to Dismiss will be DENIED. A separate Order shall issue.

Date: June 9, 2023

THEODORE D. CHUANG
United States District Judge